# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

          Respondent,

    v.

HIRAM LUIS DUCASSE,

          Petitioner.

Case No. 3:16-cr-00017-SLG

## ORDER RE SECTION 2255 PETITION

Before the Court at Docket 77 is Defendant Hiram Luis Ducasse's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The government opposed at Docket 103. Mr. Ducasse replied at Docket 112.

## MOTION PRESENTED

On June 20, 2017, Petitioner Hiram Luis Ducasse pled guilty to one count of Conspiracy to Possess and Distribute Heroin and one count of Heroin Possession with Intent to Distribute.[1] He was later sentenced to 20 years federal imprisonment followed by six years supervised release.[2] Mr. Ducasse timely filed

---

[1] Docket 47 at 3 (Plea Agreement); Docket 84 (Change of Plea Transcript).

[2] Docket 70 at 2-3 (Judgment).

a Habeas Corpus Petition under 28 U.S.C. § 2255, seeking to vacate his sentence.[3]

## FACTUAL BACKGROUND

### 1.    *Underlying facts*

At his change of plea hearing, Mr. Ducasse admitted the truth of the following facts[4]:

On November 30, 2015, Mr. Ducasse—while on felony probation—sold a half gram of heroin to a buyer in Wasilla.[5]  The buyer used some of the heroin with a friend, who had gone with him to the sale, and then returned to his father's home.[6]  Text messages between the buyer and the friend indicate that the buyer did not leave the house again that night.[7]  He was found dead the next morning with at least one needle mark in his arm.[8]  An autopsy later indicated that he had died by heroin overdose.[9]  Over the next few days, the buyer's family found a

---

[3] Docket 77.

[4] Docket 84 at 33 (Transcript of Plea Hearing); *see also* Docket 112 at 3 ("Mr. Ducasse accepts the government's narrative of the offense conduct of this case . . . .").

[5] Docket 47 at 5.

[6] Docket 47 at 5–6.

[7] Docket 47 at 6.

[8] *Id.*

[9] *Id.*

hypodermic syringe, a spoon, and a small baggie containing a dark substance—later determined to be heroin—in his closet.[10]

Police recorded a call between the buyer's friend and Mr. Ducasse on December 2, 2015, pursuant to a *Glass* warrant.[11] On the call, Mr. Ducasse learned of the buyer's death and admitted selling him heroin.[12] Police obtained a search warrant for Mr. Ducasse's residence and found "scales, approximately 1-2 ounces of heroin, cash . . . and packaging materials" therein.[13] Among the packaging materials were baggies identical to those found in the buyer's closet.[14]

### 2. Procedural history

Mr. Ducasse was indicted on three counts: (1) conspiracy to distribute, possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); (2) distribution of heroin resulting in serious bodily injury and death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1),

---

[10] Docket 47 at 6–7.

[11] Docket 47 at 7; *see State v. Glass*, 583 P.2d 872, 881 (Alaska 1978) ("[A] search warrant should be required before permitting electronic monitoring of conversations.").

[12] Docket 47 at 7.

[13] Docket 47 at 8.

[14] *Id.*

(b)(1)(C).[15]  The indictment made no reference to the specific amount of heroin seized from Mr. Ducasse.[16]

Steven Wells was initially appointed as defense counsel for Mr. Ducasse.[17] The defense sent samples of the heroin from Mr. Ducasse's and the buyer's residences to an independent laboratory for testing.[18]  But issues delayed the test, and the laboratory "exceeded the time authorized by the original expert request" to produce its report.[19]  Steven Wells also notified the Court that the Criminal Justice Act administrator had sought clarification of some of the laboratory's charges, and that he had "request[ed] additional funding to obtain a final report."[20] Although it appears that the testing was done and that preliminary results of the testing were sent to the defense,[21] no expert report was filed.

On February 27, 2017, Steven Wells moved to withdraw as counsel for Mr. Ducasse, claiming that "[t]he attorney-client relationship ha[d] become irretrievably

---

[15] Docket 2 (Indictment).

[16] *See Id.*

[17] Docket 10 (Notice of Appearance).

[18] Docket 24 at 1 (Stipulation of Evidence); *see also* Docket 112-1 at 1–3, ¶ 5 (Affidavit of Petitioner).

[19] Docket 33 at 2 (Motion to Withdraw); *see also* Docket 27 at 1 (Status Report) (explaining that lab technician had medical issues).

[20] Docket 33 at 2.

[21] *See, e.g.*, Docket 112-2 at 3 (Steven Wells letter) (discussing test results).

broken."[22]  In a letter from the same day, Steven Wells notified Mr. Ducasse that he would seek to withdraw as counsel due to their "complete inability to communicate" and Mr. Ducasse's desire to retain a new attorney.[23]  The letter described their disagreement over whether Mr. Ducasse should accept a plea offer from the government.[24]  Among other things, Steven Wells said that the maximum penalty under the plea would be 20 years, but that "[t]he government has informally indicated that it will likely seek a sentence of less than the maximum, something in the neighborhood of fifteen (15) years."[25]  He recognized that Mr. Ducasse hoped for a ten-year sentence, but reasoned that "accepting this plea offer would accept the fact that you might get a couple of years more than the ten years you are willing, but the maximum would be 20 years."[26]

Lance Wells entered an appearance as Mr. Ducasse's new defense counsel on March 21, 2017.[27]  On June 19, 2017, the parties filed a plea agreement with the Court.[28]  Under the agreement, Mr. Ducasse would plead guilty to Counts 1

---

[22] Docket 33 at 1–2.  The Court granted the motion to withdraw on March 9, 2017. Docket 39.

[23] Docket 112-2 at 5.

[24] *See* Docket 112-2 at 2–5.

[25] Docket 112-2 at 4.

[26] *Id.*

[27] Docket 42.

[28] Docket 47.

(conspiracy to possess and distribute heroin) and 3 (heroin possession with intent to distribute) and the government would dismiss Count 2 (heroin distribution resulting in serious bodily injury or death) at sentencing.[29] The parties also agreed that Mr. Ducasse was "responsible, pursuant to the conspiracy, for the possession with intent to distribute, and actual distribution of approximately 50 grams of heroin."[30] They also agreed that he was "subject to a Base Offense Level of 43, because death or serious bodily injury resulted from the use of the heroin that the defendant possessed with intent to distribute."[31] The plea agreement stated that the "United States will in all likelihood recommend the maximum 20 years" at sentencing.[32]

At the change of plea hearing on June 20, 2017, Lance Wells informed the Court that the government had offered the same plea to Mr. Ducasse when he was represented by Steven Wells, apart from some minor changes.[33] One of these changes was the addition of the term in which Mr. Ducasse "admit[ed] the offense level of 43."[34]

---

[29] Docket 47 at 2.

[30] Docket 47 at 12.

[31] Docket 47 at 13.

[32] Docket 47 at 14.

[33] Docket 84 at 10.

[34] Docket 84 at 10–11.

At the hearing, the Court confirmed with Mr. Ducasse that he had no concerns about the legal representation and advice he had received[35]; that he understood how federal sentencing guidelines applied to his case[36]; that the government had "given notice . . . that it would likely recommend a maximum . . . sentence . . . , which would be 20 years"[37]; and that he agreed with the plea agreement's recitation of the facts.[38] Mr. Ducasse pleaded guilty to counts one and three.[39] The Court accepted the plea, finding that it was made "knowingly and voluntarily."[40]

On October 2, 2017, Mr. Ducasse was sentenced to 20 years imprisonment with six years supervised release.[41] One year later, on October 2, 2018, Mr. Ducasse petitioned the Court to vacate his sentence, claiming ineffective assistance of counsel.[42] He requested an evidentiary hearing on this matter in his reply.[43]

---

[35] Docket 84 at 9–10.

[36] Docket 84 at 22–25.

[37] Docket 84 at 14.

[38] Docket 84 at 33.

[39] *Id.*

[40] Docket 84 at 34.

[41] Docket 103-1 at 71.

[42] Docket 77. Mr. Ducasse chose to proceed without representation in this matter. *See* Docket 81. He may by motion seek to have counsel appointed to represent him.

[43] Docket 112 at 27.

**DISCUSSION**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[44] "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."[45] To satisfy the prejudice requirement, a petitioner challenging a guilty plea must show that he would have gone to trial but for his counsel's errors.[46]

The Court must grant an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[47] The burden on the petitioner to obtain an evidentiary hearing is "fairly lenient," but nonetheless requires him "to allege specific facts which, if true, would entitle him to relief."[48] An evidentiary hearing is not necessary

---

[44] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

[45] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 689).

[46] *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985); *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010).

[47] 28 U.S.C. § 2255(b).

[48] *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)); *see also United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion presents no more than

if the petitioner's allegations are "so palpably incredible or patently frivolous as to warrant summary dismissal."[49]

Mr. Ducasse asserts four claims of ineffective assistance of counsel in his petition.[50] The government argues that the petition should be dismissed summarily because Mr. Ducasse has not pled facts sufficient to obtain an evidentiary hearing.[51] For the following reasons, the Court determines that an evidentiary hearing is warranted as to Mr. Ducasse's first and fourth claims, but that the remaining two claims should be dismissed at this time.

### 1. Mr. Ducasse's first and fourth claims

The Court will address Mr. Ducasse's first and fourth claims together, as they are based on the same factual allegations. Mr. Ducasse's first claim asserts that he was rendered ineffective assistance when "defense counsel allowed defendant to enter into a plea agreement based on the threat of being convicted on ct. 2 ('resulting in bodily injury & death') when there was insufficient evidence to make a finding of guilt as set forth in *Burrage v. United States*," 571 U.S. 204 (2014).[52] In *Burrage*, the Supreme Court held that the drugs distributed by a

---

conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.").

[49] *United States v. McMullen*, 98 F.3d at 1159 (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985)).

[50] Docket 77 at 4–5.

[51] Docket 103 at 8–16.

[52] Docket 77 at 4. The government argues that 'allowing' a client to plead guilty cannot

defendant must be an "independently sufficient cause of the victim's death or serious bodily injury" or a "but-for cause of the death or injury" to establish liability under 21 U.S.C. § 841(b)(1)(C).[53]

Mr. Ducasse's fourth claim asserts that "defense council refused to obtain exculpatory evidence (i.e. [a] drug analysis report) because it would have cost him $1,200.00. Counsel also failed to further investigate exculpatory evidence found at the home of the deceased . . . ."[54]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[55] Therefore, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a

---

constitute unprofessional conduct because "[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer." Docket 103 at 8 (quoting *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003)). But Mr. Ducasse argues that his counsel did not properly advise him of the law governing his case or investigate the sufficiency of the evidence against him. *See* Docket 112 at 9–14. A petitioner may "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth" in Supreme Court precedent. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Delgado-Ramos*, 635 F.3d 1237, 1239–40 (9th Cir. 2011) (asking "whether counsel's advice regarding the plea 'was within the range of competence demanded of attorneys in criminal cases" (quoting *Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir. 1988))).

[53] 571 U.S. 204, 218–19 (2014).

[54] Docket 77 at 5.

[55] *White v. Ryan*, 895 F.3d 641, 666 (9th Cir. 2018) (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)).

heavy measure of deference to counsel's judgments."[56]

Mr. Ducasse characterizes the evidence against him as follows: the buyer's friend's statement that she injected the buyer with heroin purchased from Ducasse; Mr. Ducasse's telephonic confession that he had sold heroin to the buyer; surveillance footage allegedly showing the transaction; and the baggies found in the buyer's closet, which matched baggies seized from Mr. Ducasse's residence.[57]

In his February 27, 2017 letter to Mr. Ducasse, Steven Wells explained the rule in *Burrage* and why he thought the government had sufficient evidence to convict Mr. Ducasse on count two:

> *Burrage* is also the case that established a "but-for" causation test for drug distribution that results in death. This means that the government has to prove that [the buyer] would have lived "but-for" the drugs you distributed to him. Unfortunately for you, [the buyer] only had heroin in his system. He did not have a mix of drugs, which would have made it more difficult to establish that it was specifically the heroin that killed him. Even if we can establish that [the buyer] got heroin from another source, we have no way of knowing how strong that heroin was, how much [the buyer] took or when he took it. In *Burrage*, one of the experts testified that the deceased might have died even if he had not taken the heroin that Burrage provided. We will have no such testimony here, mainly because we will have no evidence that Michael actually received heroin from another person. At best we will have your testimony that you do not believe the heroin you gave [the buyer] could have killed him. Your defense, then, requires the jury to believe your opinion regarding the use of drugs when you are the one who has the most at stake in the trial. Given the current attitude regarding opioid addiction and overdoses, I expect

---

[56] *Strickland*, 446 U.S. at 667.

[57] Docket 112 at 11.

that the jury will not believe your opinion.[58]

In an affidavit filed with his reply, Mr. Ducasse states that Steven Wells rebuffed several of his evidentiary concerns:  his request to "obtain the CCTV footage of the period of time during which [the buyer and the friend] were parked" near the site of the transaction[59]; his "concerns . . . regarding the integrity of the evidence found by [the buyer's] family days after law enforcement had searched the crime scene"[60]; and his belief that another drug dealer, named Nagle, had also sold heroin to the buyer on the day of his death.[61]  Mr. Ducasse states that neither Steven Wells nor Lance Wells complied with his request for a "copy of the discovery" to review for "potential misinformation or items that might generate ideas beneficial to [the] defense"[62]; that neither attorney listened to his explanations about why the matching baggies were unpersuasive[63]; and that neither attorney paid attention to the fact that nobody else who had used heroin purchased from him, including the buyer's friend, died.[64]  Finally, Mr. Ducasse

---

[58] Docket 112-2 at 4.

[59] Docket 112-1 at 3, ¶ 6.

[60] Docket 112-1 at 3, ¶ 7.

[61] Docket 112-1 at 3, ¶10 (describing a conversation between Mr. Ducasse and Nagle at the Mat-Su Pretrial Center).

[62] Docket 112-1 at 6, ¶ 19.

[63] Docket 112-1 at 6, ¶ 20.

[64] Docket 112-1 at 6–7, ¶ 21.

states that Steven Wells informed him that the results from the independent laboratory would "bode well in [his] case," but refused to submit the samples for more thorough testing unless Mr. Ducasse covered the expense.[65]

In his February 27, 2017 letter, Steven Wells explained why he disagreed with several of Mr. Ducasse's assessments of the evidence. Steven Wells believed that the defense would be unlikely to convince a jury that the friend, who planned to testify that she and the buyer only purchased heroin from Mr. Ducasse, was lying.[66] He thought that Mr. Ducasse's theory about the strength of his heroin would require him to testify, and believed that he would be easily impeached.[67] And Steven Wells did not believe that test results showing a difference between the heroin seized from Mr. Ducasse's residence and the heroin found in the buyer's closet would be exculpatory.[68]

In his affidavit, Lance Wells stated that he found "[t]he evidence in this case . . . very strong as to Mr. Ducasse" because of his telephonic confession,[69] that he did not find the independent drug analysis helpful to the defense,[70] and that

---

[65] Docket 112-1 at 2–3, ¶¶ 5, 9.

[66] Docket 112-2 at 3.

[67] *Id.*

[68] *Id.*

[69] Docket 104 at 3, ¶ 13.

[70] Docket 104 at 4, ¶ 18.

he "ha[d] done everything [he] could for Mr. Ducasse."[71]  He stated:

> I reviewed the entire file and met with Mr. Ducasse over a dozen times
> in person to review this matter.  There were also over 50 phone calls
> from him to my office as well as looking up cases he had found and
> researching them for him.  I also received a number of letters from him
> as well.[72]

Finally, he stated that he and Mr. Ducasse "read each and every page of the plea

agreement."[73]

Mr. Ducasse disputes Lance Wells' account in his own affidavit.  He states

that Lance Wells met with him only three times:  twice to discuss the plea

agreement and once to review the presentence investigation report.[74]  He also

states that he telephoned Lance Wells far fewer than 50 times and that "90% of

the times [he] attempted to contact [Lance Wells], neither he nor anyone

associated with [Lance Wells] were available to take [the] call."[75]  Mr. Ducasse

states that he and Lance Wells only discussed the plea agreement "in general

terms" and that he raised numerous concerns, which Lance Wells rebuffed.[76]

In short, Mr. Ducasse disagrees with each of his attorneys about the level of

attention his defense received.  Mr. Ducasse argues that an evidentiary hearing is

---

[71] Docket 104 at 4, ¶ 19.

[72] Docket 104 at 2, ¶ 6.

[73] Docket 104 at 4, ¶ 15.

[74] Docket 112-1 at 4, ¶¶ 11, 12.

[75] Docket 112-1 at 4, ¶ 13.

[76] Docket 112-1 at 4–5, ¶ 18.

necessary because "the record in this case is void of any information as to what pretrial activity was taken by [his] attorneys."[77]  The Court finds that Mr. Ducasse has met the "fairly lenient" burden to obtain an evidentiary hearing on these claims by alleging specific instances in which he maintains each defense counsel failed to investigate relevant evidence in his case.[78]  Accordingly, a hearing is warranted to determine whether defense counsel adequately investigated the evidence related to Count 2 of the indictment prior to the change of plea hearing.

Mr. Ducasse also argues that two Supreme Court decisions are relevant to these claims.  In *Apprendi v. New Jersey*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[79]  And the Court concluded in *Alleyne v. United States* that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."[80]  Mr. Ducasse argues that neither of his attorneys "thoroughly explained the impact of *Apprendi* and *Alleyne* on [his] case" and therefore his plea was not knowing and

---

[77] Docket 112 at 12.

[78] *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (requiring petitioner "to allege specific facts which, if true, would entitle him to relief" (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996))).

[79] 530 U.S. 466, 490.

[80] 570 U.S. 99, 103.

voluntary.[81]  Mr. Ducasse's argument as to the applicability of these two cases is unclear.  His conclusory statements about them are insufficient to merit an evidentiary hearing on the issue.[82]

> 2.    *Mr. Ducasse's second claim*

Mr. Ducasse's second claim asserts that "defense counsel failed to put the prosecution's case with regard to the drug amount to the adversarial test as required by settled law as well as the Sixth Amendment to the Constitution."[83]  In his plea agreement, Mr. Ducasse agreed that he was "responsible . . . for the possession with intent to distribute, and actual distribution of approximately 50 grams of heroin."[84]  The Court confirmed this quantity with Mr. Ducasse at his change of plea hearing.[85]  Mr. Ducasse argues that the government would not have been able to prove that he had possessed this much heroin, and that the allegedly inflated quantity to which he pled increased his base offense level.[86]

This argument is without merit.  Mr. Ducasse's base offense level was 43,

---

[81] Docket 112 at 14.

[82] *See United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.").  To the extent Mr. Ducasse challenges the drug quantity to which he stipulated in the plea agreement, the Court discusses that issue in its analysis of his second claim.

[83] Docket 77 at 4.

[84] Docket 47 at 12.

[85] Docket 84 at 24.

[86] Docket 112 at 19–20.

which is the highest level under the Federal Sentencing Guidelines.[87]  As

explained in the Presentence Report,

> If the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B),
> or (b)(1)(C) and the offense of conviction establishes that death or
> serious bodily injury resulted from the use of the substance and that
> the defendant committed the offense after one or more prior
> convictions for a similar offense, the base offense level is 43.  USSG
> § 2d1.1(a)(1).  In this case [the buyer] died of a heroin overdose after
> purchasing heroin from the defendant and the defendant has a prior
> conviction of Misconduct Involving Controlled Substances in the
> Second Degree . . . .[88]

Moreover, the parties agreed in the plea agreement that Mr. Ducasse "is subject

to a Base Offense Level of 43, because death or serious bodily injury resulted from

the use of the heroin that the defendant possessed with intent to distribute and

actually distributed."[89]  At the change of plea hearing, the Court summarized that

"the quantity [of heroin] is not as much the driver at all in this particular case under

the guidelines, it is that the base offense level 43 applies because death or serious

bodily injury  resulted from the use of the heroin."[90]  Mr. Ducasse then stated that

he had no questions about the base offense level.[91]  And Lance Wells emphasized

this point again in his affidavit, stating that the "drug quantity issue is irrelevant

---

[87] *See* U.S. Sentencing Guidelines Manual app. G (U.S. Sentencing Comm'n 2004)
(sentencing table).

[88] Docket 56 at 11.

[89] Docket 47 at 13.

[90] Docket 84 at 28.

[91] Docket 84 at 28.

because Mr. Ducasse admitted to 50 grams of heroin in the plea agreement, and because the stipulation to an offense level of 43 made that fairly irrelevant in any event."[92]

Even if the drug quantity had been relevant to Mr. Ducasse's base offense level at sentencing, the cases he cites for support preclude his claim. Relying on *Apprendi v. New Jersey*, Mr. Ducasse argues that the Court committed error at his sentencing because the government did not "show overwhelming and uncontroverted evidence of the drug quantity."[93] In *United States v. Harper*, the Supreme Court rejected a petitioner's argument that the prosecution was required to prove beyond a reasonable the drug quantity to which he had stipulated in his plea agreement.[94] The Circuit explained that the petitioner had

> stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside the plea agreement to determine drug quantity at sentencing. Therefore, the principles articulated in *Apprendi* are not implicated by the instant case, and [petitioner's] argument must fail.[95]

---

[92] Docket 104 at 3–4, ¶ 14.

[93] Docket 112 at 19.

[94] 246 F.3d 520, 529 (6th Cir. 2001), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 384 n.7 (6th Cir. 2002); *see also Leachman*, 309 F.3d at 385–86 ("[Petitioner's] argument fails because he knowingly and voluntarily waived his constitutional rights to a jury and to proof beyond a reasonable doubt of the amount of drugs specified against him.").

[95] *Harper*, 246 F.3d at 530–31.

Mr. Ducasse's second claim presents identical facts. Accordingly, it is dismissed as patently frivolous.[96]

### 3. Mr. Ducasse's third claim

Mr. Ducasse's third claim asserts that "defense council [sic] sent defendant a letter assuring him that he would not get a sentence of 20 years. Had defendant known that he could get 20 years he would have gone to trial."[97] Mr. Ducasse points to the February 27, 2017 letter that Steven Wells sent before withdrawing as counsel. The letter states that, pursuant to the plea agreement, "the maximum would be 20 years," but that the "government has informally indicated that it will likely seek a sentence of less than the maximum, something in the neighborhood of fifteen (15) years."[98] Mr. Ducasse states in an affidavit that Lance Wells also informed him, shortly before the change of plea hearing, that he "had 'sat down' with the government and that 'they would not be asking for the maximum sentence of 20 years.'"[99] Lance Wells disputes this in his own affidavit, stating that "At no time did I tell Mr. Ducasse he would get less than 20 years. In fact, in all likelihood,

---

[96] *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (explaining that no evidentiary hearing is required when petitioner's allegations are "so palpably incredible or patently frivolous as to warrant summary dismissal" (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985))).

[97] Docket 77 at 4.

[98] Docket 112-2 at 4.

[99] Docket 112-1 at 4, ¶14.

both of us felt he would get twenty years."[100]

Mr. Ducasse's plea agreement expressly stated that the government would "in all likelihood recommend the maximum 20 years" at sentencing.[101] And at the change of plea hearing Mr. Ducasse confirmed his understanding that government "would likely recommend a maximum . . . sentence . . . , which would be 20 years."[102] Mr. Ducasse also confirmed that he understood the sentencing process, and that the Court, instead of his defense counsel or the government, would ultimately determine his sentence.[103] Finally, Mr. Ducasse did not attempt to withdraw his plea after the presentence investigation report and the government's sentencing memorandum both recommended the maximum 20 year sentence.[104]

Even assuming that defense counsel had informed Mr. Ducasse that he would not receive the maximum sentence of 20 years, Mr. Ducasse thereafter received information to the contrary in the plea agreement and at the change of plea hearing. The record demonstrates that at the change of plea hearing, Mr. Ducasse clearly understood that he could be sentenced to 20 years and nevertheless entered his guilty plea. Mr. Ducasse has therefore failed to show that

---

[100] Docket 104 at 2–3, ¶10.

[101] Docket 47 at 14.

[102] Docket 84 at 14.

[103] Docket 84 at 22–25.

[104] *See* Docket 56 at 1 (presentence report); Docket 62 at 2 (government's sentencing memorandum).

he would probably have gone to trial but for his counsel's alleged errors.[105]  His

third claim is summarily dismissed because it is palpably incredible.[106]

## CONCLUSION

In light of the foregoing, Defendant's Section 2255 Petition at Docket 77 is

DENIED as to claims two and three.[107]  The Court will hold an evidentiary hearing

as to claims one and four on **November 22, 2019 at 9:00 a.m. in Anchorage**

**Courtroom 2.**

At the evidentiary hearing, Mr. Ducasse shall identify what additional

investigation he believes was warranted in his case.  The government shall

arrange for the presence of Steven Wells and Lance Wells at the hearing.  Mr.

---

[105] *See Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010) ("In the context of a plea, a petitioner satisfies the prejudice prong of the *Strickland* test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))).

[106] *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (explaining that no evidentiary hearing is required when petitioner's allegations are "so palpably incredible or patently frivolous as to warrant summary dismissal" (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985))).

[107] The Court further finds that Mr. Ducasse has not made the requisite substantial showing of the denial of a constitutional right, and therefore a certificate of appealability will not be issued by this Court with respect to the two dismissed claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability may be granted only if applicant made "substantial showing of the denial of a constitutional right," *i.e.*, showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).  Mr. Ducasse may request a certificate of appealability from the Ninth Circuit Court of Appeals.

Ducasse may appear telephonically by calling the Meet Me Bridge at (907) 677-6248 and enter Access Code 668160 five minutes prior to the hearing.

DATED this 7th day of October, 2019 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE